UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRYAN K. MOMANY,

      Plaintiff,                  Case No. 2:17-CV-10626
                                          District Judge Paul D. Borman

v.                                     Magistrate Judge Anthony P. Patti

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.
_____/

## RECOMMENDATION TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DE 15) AND GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DE 17)

**I.**    **RECOMMENDATION**: For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment (DE 15), **GRANT** Defendant's motion for summary judgment (DE 17),

and **AFFIRM** the Commissioner's decision.

**II.**    **REPORT**

      Plaintiff, Bryan K. Momany, brings this action under 42 U.S.C. § 405(g) for

review of a final decision of the Commissioner of Social Security

("Commissioner") denying his applications for social security disability insurance

(DI) benefits and supplemental security income (SSI) benefits. This matter is

before the United States Magistrate Judge for a Report and Recommendation on

Plaintiff's motion for summary judgment (DE 15), the Commissioner's cross

motion for summary judgment (DE 17) and the administrative record (DE 11).

### A.      Background and Administrative History

Plaintiff filed his applications for DI and SSI benefits on April 14, 2013,

alleging that he had been disabled since April 5, 2013.  (R. at 184-99.)  In his April

15, 2013 disability report, he states that his deep vein thrombosis in his left leg

limited his ability to work.  (R. at 229.)  His applications were denied on August 2,

2013.  (R. at 72-91.)

On August 7, 2013, Plaintiff requested a hearing by an Administrative Law

Judge (ALJ).  (R. at 102-03.)  On November 13, 2014, ALJ Richard L. Sasena held

a hearing, at which Plaintiff and a vocational expert, Annette K. Holder, testified.

(R. at 45-71.)  ALJ Sasena issued an opinion on April 21, 2015, which determined

that Plaintiff was not disabled within the meaning of the Social Security Act.  (R.

at 27-44.)

On June 12, 2015, Plaintiff submitted a request for review of the hearing

decision/order.  (R. at 25-26.)  However, on April 23, 2016, the Appeals Council

denied Plaintiff's request for review.  (R. at 4-9.)  Thus, ALJ Sasena's decision

became the Commissioner's final decision.

After being granted an extension of time to file a civil action (R. at 1-3),

Plaintiff timely commenced the instant action on  February 28, 2017.  (DE 1.)

### B.     Plaintiff's Medical History

The administrative record contains approximately 550 pages of medical records, which were available to the ALJ at the time of his April 21, 2015 decision. (R. at 297-856 [Exhibits 1F – 14F].)  These materials will be discussed in detail, as necessary, below.

### C.     The Administrative Decision

Pursuant to 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), at **Step 1** of the sequential evaluation process, the ALJ found that Plaintiff has not engaged in substantial gainful activity since April 5, 2013, the alleged onset date.  (R. at 32.) At **Step 2**, the ALJ found that Plaintiff has the following severe impairments: degenerative joint disease; status post left shoulder surgery; degenerative disc disease; history of deep vein thrombosis; and factor V Leiden deficiency.[1]  (*Id*.)  At **Step 3**, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.  (*Id.* at 32-33.)  Prior to **Step 4** of the sequential process, the ALJ determined that Plaintiff has the residual functional capacity ("RFC")[2] to:

---

[1] "Factor V Leiden is the name of a specific gene mutation that results in thrombophilia, which is an increased tendency to form abnormal blood clots that can block blood vessels."  https://ghr.nlm.nih.gov/condition/factor-v-leiden-thrombophilia.

[2] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations.

perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that he requires a sit/stand option after 15 minutes; can never climb ladders; can occasionally climb, balance, stoop, kneel, crouch, or crawl; and must avoid concentrated exposure to unprotected heights, vibrating tools, moving machinery, dust, fumes, or gases.

(*Id.* at 33-37.) At **Step 4**, the ALJ determined that Plaintiff was unable to perform any past relevant work. (*Id*. at 37.) At **Step 5**, considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed. (*Id*. at 37-38) The ALJ therefore concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, from April 5, 2013, through the date of the decision. (*Id*. at 38.)

### D.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as

---

20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec*., 276 F.3d 235, 239 (6th Cir. 2002).

to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  "Substantial evidence supports a decision if 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion' backs it up." *Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 783 (6th Cir. 2017) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant."); *Richardson*, 402 U.S. at 399 ("We therefore are presented with the not uncommon situation of conflicting medical evidence. The trier of fact has the duty to resolve that conflict.").  Furthermore, the claimant "has the ultimate burden to establish an entitlement to benefits by proving the existence of a disability." *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."); *see also Biestek*, 880 F.3d at 783 ("[A] decision supported by substantial evidence must stand, even if we might decide the question differently based on the same evidence.") (citing *Wright-Hines v. Comm'r of Soc. Sec.*, 597 F.3d 392, 395 (6th Cir. 2010)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### E.   Analysis

Plaintiff argues that the ALJ erred by: **(1)** failing to find Plaintiff's depression and anxiety to be severe at Step 2; **(2)** finding that Plaintiff's impairments do not meet or medically equal a listing at Step 3; **(3)** improperly assessing Plaintiff's RFC; and **(4)** finding that Plaintiff is capable of performing substantial gainful employment.  (DE 15 at 12-27.)  The Commissioner opposes Plaintiff's motion, asserting that substantial evidence supports the Commissioner's decision.  (DE 17 at 8-25.)  I will address each argument in turn.

### 1.    The ALJ's Step 2 Determination

At Step 2 of his analysis, the ALJ determined that Plaintiff had the following severe impairments:  degenerative joint disease; status post left shoulder surgery; degenerative disc disease; history of deep vein thrombosis; and factor V Leiden deficiency.  (R. at 32.)  Plaintiff argues that the ALJ erred by not finding Plaintiff's depression and anxiety to be severe as well.  (DE 15 at 12-14.)  In support of his argument, Plaintiff asserts that: (1) while he had not treated with a mental health professional, his treating pain management physician, Dr. Usama Gabr, prescribed Sertraline (Zoloft); and (2) he testified at the hearing that his anxiety is caused by "[e]verything that's going on in my life now."  (DE 15 at 13.)  Plaintiff argues that the ALJ did not even consider Plaintiff's emotional problems, which he claims would affect his ability to do "basic work activities."  (*Id.*)

7

In response, the Commissioner contends that "[t]he fact that Plaintiff was prescribed an antidepressant medication and testified that he has anxiety does not establish significant work limitations." (DE 17 at 8.) In fact, Plaintiff concedes that he has never treated with a mental health professional, and he only took Zoloft that his pain management doctor prescribed. (*Id.* at 10, citing R. at 527, 536, 846.) Moreover, the Commissioner continues, Plaintiff fails to show that crediting him with a severe mental impairment at Step 2 would have resulted in any functional limitations that would preclude unskilled work. (*Id.* at 8-9.)

At Step 2 of the sequential evaluation process, it is the claimant's burden to demonstrate that he suffers from a severe impairment. *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001). In the Sixth Circuit, "the severity determination is 'a *de minimis* hurdle in the disability determination process.'" *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008) (quoting *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988)). "[A]n impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education and experience." *Higgs*, 880 F.2d at 862. The test is used to "screen out totally groundless claims." *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 89 (6th Cir. 1985). However, the Step 2 severity analysis is simply a threshold determination. Sixth Circuit precedent readily establishes that failure to find an impairment severe at Step 2 of the sequential analysis is not reversible error if the

ALJ found another impairment severe and thus continued with the five-step evaluation. *See e.g., Fink v. Astrue*, 253 F. App'x 580, 584 (6th Cir. 2007); *Anthony*, 266 F. App'x at 457. "The fact that some of [the plaintiff's] impairments were not deemed to be severe at step two is therefore legally irrelevant." *Anthony*, 266 F. App'x at 457; *accord Dickey-Williams v. Comm'r of Soc. Sec.*, 975 F.Supp.2d 792, 822-23 (E.D. Mich. 2013) ("any alleged omission from the list of severe impairments does not undermine the ALJ's decision" so long as the ALJ considers Plaintiff's "severe and nonsevere impairments in the remaining steps of the sequential analysis") (citation omitted).

In this case, as the Commissioner correctly points out, Plaintiff did not allege a mental impairment in his initial disability application (R. at 229), and he specifically denied mental limitations in his initial function report, reporting that he can pay attention "all the time" and that he is "very good" at following written and spoken instructions, getting along with authority figures, and handling stress and changes in his routine. (DE 17 at 9, citing R. at 229, 241-42.) Further, while Plaintiff points to some "notation[s] of 'anxiety'" in the record (DE 15 at 10, citing R. at 490, 500, 580, 653, 856), merely mentioning the term "anxiety" or checking a box on a form does not indicate that Plaintiff suffered from any functional limitations related to depression or anxiety, much less any functional limitations in excess of those found by the ALJ in his RFC. In fact, one of those physicians

9

noted in July 2014 that "[Plaintiff] does have a history of some anxiety *although I never caught that.  He is always pleasant, in good spirits.  He seems comfortable*" (R. at 490 (emphasis added)), and one of the records cited by Plaintiff  is merely his own response to a question on a questionnaire.  (R. at 856.)  Moreover, while Plaintiff's July 11, 2014 note states that he had a depressed mood and anxious appearance (R. at 580), his mental status findings were otherwise consistently normal.  (*See, e.g.,* R. at 469, 576, 580, 583, 587, 591.)  Even if Plaintiff had been diagnosed with anxiety and/or depression, it is well settled in the Sixth Circuit that "the mere diagnosis of an impairment does not render an individual disabled nor … reveal anything about the limitations, if any, it imposes upon an individual."  *See McKenzie v. Comm'r of Soc. Sec.*, No. 99-3400, 2000 WL 687680, at *5 (6th Cir. May 19, 2000); *see also Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("The mere diagnosis of [a condition], of course, says nothing about the severity of the condition.").  Similarly, "taking medication for anxiety and depression is not necessarily, in and of itself, strong evidence of having a disability, let alone conclusive evidence" because "[t]t is not uncommon to take such medications in this country, and countless numbers of duly employed workers and students are on them."  *Colbert v. Comm'r of Soc. Sec.*, No. 2:15-cv-13467, 2017 WL 1214187, at *6 (E.D. Mich. Feb. 10, 2017) (citation omitted) (noting, in finding that the plaintiff failed to establish that she had a medically determinable mental

10

impairment, that the plaintiff did not list any mental impairment(s) in her applications for benefits, the record does not contain any evidence she received mental health treatment, and the function report indicates plaintiff had no issues with her memory, concentration, understanding, getting along with others or completing tasks), *report and recommendation adopted*, 2017 WL 1018149 (E.D. Mich. Mar. 16, 2017). *See also, Burns v. Massanari*, 16 F. App'x 522, 523 (8th Cir. 2001) ("We conclude the administrative law judge (ALJ) correctly evaluated the severity of Burns's depression and associated functional limitations. Burns did not allege disabling depression in her applications; and although she was treated for depression, took prescription and antidepressants, and attended counseling, no treating physician indicated her depression was disabling….").

ALJ Sasena thoroughly considered "the entire record," including the medical evidence of record and Plaintiff's function report submitted in connection with his claim for disability benefits in reaching his determination in this case. None of Plaintiff's treatment providers opined that anxiety or depression created any functional limitations for Plaintiff. Indeed, Plaintiff's family practice doctor affirmatively stated in his May 2013 Medical Source Statement that Plaintiff *had no mental limitations*. (See R. at 347.) Plaintiff fails to point to any additional restrictions that would have been included in the RFC had the ALJ more specifically listed anxiety or depression as a severe impairment in his written

11

determination, and accordingly his challenge to the ALJ's Step 2 determination

fails. "No principle of administrative law or common sense requires [a reviewing

court] to remand a case in quest of a perfect opinion unless there is reason to

believe that the remand might lead to a different result." *Kornecky v. Comm'r of

Soc. Sec.*, 167 F. App'x 496, 507 (6th Cir. 2006) (quoting *Fisher v. Bowen*, 869

F.2d 1055, 1057 (7th Cir. 1989)); *see also Kobetic v. Comm'r of Soc. Sec.*, 114 F.

App'x 171, 173 (6th Cir. 2004) (noting that in such instances courts are not

required to "convert judicial review of agency action into a ping-pong game")

(citation omitted). Because the ALJ's ultimate conclusion would not change,

Plaintiff's claim of error is denied.

## 2.    The ALJ's Step 3 Determination

Plaintiff argues that the ALJ erred in failing to find that his impairments

meet or equal Listing 1.04 (spine disorders), contending that the ALJ's analysis

regarding Listing 1.04 was "minimal, at best, and incomplete." (DE 15 at 17-20.)

Plaintiff also complains that the ALJ should have discussed Listing 4.11 (chronic

venous insufficiency), but completely failed to do so. (*Id.* at 15-17.) The

Commissioner responds that, while the ALJ's step three analysis was not as

comprehensive as it could have been, his decision as a whole demonstrates

sufficient consideration of the relevant evidence. The Commissioner further

argues that, in any event, any such error is harmless as Plaintiff has failed to make

12

a plausible showing that his conditions meet or equal either Listing.  (DE 17 at 12-16.)

A claimant's impairment must meet every element of a Listing before the Commissioner may conclude that she is disabled at Step 3 of the sequential evaluation process.  *See* 20 C.F.R. § 404.1520; *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 855 (6th Cir. 1986).  The claimant has the burden to prove that all the elements are satisfied.  *King v. Sec'y of Health & Human Servs.*, 742 F.2d 968, 974 (6th Cir. 1984).  Moreover, "[t]he burden of providing a … record … complete and detailed enough to enable the Secretary to make a disability determination rests with the claimant."  *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986).  It is not sufficient to come close to meeting the conditions of a Listing.  *See, e.g., Dorton v. Heckler*, 789 F.2d 363, 367 (6th Cir. 1989) (Commissioner's decision affirmed when medical evidence "almost establishes a disability" under Listing). Plaintiff has failed to meet that burden with respect to Listings 1.04 or 4.11.

ALJ Sasena states that he "considered all appropriate listings in regard to Claimant's impairments," and found that Plaintiff's impairments do not meet or medically equal "the specific criteria for any impairment listed in Appendix 1, Subpart P, Regulations No. 4, including 1.02 or 1.04."  (R. at 33.)  While the ALJ's Step 3 finding is admittedly cursory, "it is well-settled that the Court may look at

13

the rest of the ALJ's decision in order to determine whether substantial evidence supports the ALJ's Step Three determination." *Smukala v. Comm'r of Soc. Sec.*, No. 15-10612, 2016 WL 943953, at *10 (E.D. Mich. Feb. 23, 2016), *report and recommendation adopted*, 2016 WL 931161 (E.D. Mich. Mar. 11, 2016); *Gower v. Comm'r of Soc. Sec.*, No. 13-14511, 2015 WL 163830, at *9 (E.D. Mich. Jan. 13, 2015) (holding that an ALJ does not err where his Step Three findings are supported by findings at Step Four). Moreover, an ALJ's failure to articulate Step 3 findings is harmless where "concrete factual and medical evidence is apparent in the record and shows that even if the ALJ had made the required findings, the ALJ would have found the claimant not disabled…." *M.G. v. Comm'r of Soc. Sec.*, 861 F.Supp.2d 846, 859 (E.D. Mich. 2012) (citation omitted). This is because the Sixth Circuit "has consistently rejected a heightened articulation standard, noting … that the ALJ is under no obligation to spell out 'every consideration that went into the step three determination' or 'the weight he gave each factor in his step three analysis,' or to discuss every single impairment." *Andrews v. Comm'r of Soc. Sec.*, No. 12-13111, 2013 WL 2200393, at *12 (E.D. Mich. May 20, 2013) (citing *Staggs v. Astrue*, 2011 WL 3444014, at *3 (M.D. Tenn. Aug. 8, 2011) (citation omitted)). As the *Staggs* court further explained, "[n]or is the procedure so legalistic that the requisite explanation and support must be located entirely within the section of the ALJ's decision devoted specifically to step three; the court in

14

*Bledsoe* implicitly endorsed the practice of searching the ALJ's entire decision for statements supporting his step three analysis." *Staggs*, 2011 WL 3444014, at *3 (citing *Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006)).  Thus, remand is not required where the evidence makes clear that even if the ALJ "had made the required findings, [he] would have found the claimant not disabled." *M.G.*, 861 F.Supp.2d at 861.

### a. Listing 1.04

Plaintiff contends that he meets or equals Listing 1.04A.  (DE 15 at 17-18.) That Listing provides, in pertinent part:

> 1.04 *Disorders of the spine* (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuroanatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)
>
> 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04A.

The Commissioner acknowledges that Plaintiff's medical records showed mild degeneration in his lumbar spine and a mild disc protrusion with slight nerve-root abutment at S1.  (R. at 35, citing R. at 572, 574.)  However, as even Plaintiff concedes, his slight nerve-root abutment is not the same thing as "impingement" or

15

"compression," as required to meet Listing 1.04A. (DE 15 at 17-18, citing R. at

571-72.) *See, e.g., Adams v. Comm'r of Soc. Sec.*, No. 13-11132, 2014 WL

897381, at *9 n.5 (E.D. Mich. Mar. 6, 2014) (explaining that nerve-root *abutment*

does not satisfy Listing 1.04A's requirement of nerve-root *compression*). Further,

the ALJ also noted that the record contains evidence of only intermittent positive

straight leg raising, generally good ranges of motion, full strength and stable

sensation, and intermittent weakness, and generally mild findings. (*See* R. at 35-

37, citing R. at 553, 572, 574, 591, 595, 602, 847-48) To show that his back

impairment meets or medically equals Listing 1.04A, the abnormal physical

findings must be simultaneously present for a period of at least 12 months. *See* 20

C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00D ("Because physical findings may be

intermittent, their presence over a period of time must be established by a record of

ongoing management and evaluation."); 20 C.F.R. §§ 404.1526(a), 416.926(a)

(requiring plaintiff to present medical findings "at least equal in severity *and*

*duration* to the criteria" for meeting a Listing to show that an impairment

medically equaled a listing) (emphasis added). The ALJ explained that Plaintiff's

"condition was not ever disabling for a period of 12 consecutive months." (R. at

37.) As the Commissioner states, "Plaintiff has not explained why th[e ALJ's]

discussion of the evidence would be insufficient to support the ALJ's Step Three

finding if the ALJ had merely copied and pasted it under [his] Step Three heading." *Gower*, 2015 WL 163830, at *9.

Further, any deficiency in the ALJ's opinion is harmless where "concrete factual and medical evidence is apparent in the record and shows that even if the ALJ had made the required findings, the ALJ would have found the claimant not disabled…." *M.G.*, 861 F.Supp.2d at 859 (citation omitted). Plaintiff has failed to point to specific evidence showing that he could reasonably meet or equal every requirement of Listing 1.04A. He concedes that he cannot show nerve impingement or compression, which is a requirement to meeting Listing 1.40A. (DE 15 at 9, citing R. at 571-72.) Further, a review of the record reveals only intermittent positive straight leg raising and lower extremity weakness. (*See, e.g.,* R. at 301, 390, 449, 458, 576, 580, 583, 586-87, 598, 608, 847-48.) Plaintiff accordingly fails to show how he meets or equals Listing 1.04A and his claim of error should be denied.

### b.    Listing 4.11

Plaintiff contends that the ALJ should have addressed Listing 4.11, chronic venous insufficiency, and that his failure to do so requires remand. (DE 15 at 15-17.) However, "neither the listings nor the Sixth Circuit require the ALJ to 'address every listing' or 'to discuss listings that the applicant clearly does not meet.'" *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 432 (6th Cir.

2014) (citations omitted). Rather, an "ALJ does not commit reversible error by failing to evaluate a listing at Step Three" unless the plaintiff "point[s] to specific evidence that demonstrates he reasonably could meet or equal every requirement of the listing." *Id.* at 432-33 (citations omitted).

Listing 4.11 states:

4.11 *Chronic venous insufficiency* of a lower extremity with incompetency or obstruction of the deep venous system and one of the following:

A. Extensive brawny edema (see 4.00G3) involving at least two-thirds of the leg between the ankle and knee or the distal one-third of the lower extremity between the ankle and hip.

OR

B. Superficial varicosities, stasis dermatitis, and either recurrent ulceration or persistent ulceration that has not healed following at least 3 months of prescribed treatment.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 4.11.

As the ALJ recognized in his opinion, Plaintiff was assessed in April and May 2013 as having deep vein thrombosis, but Plaintiff was found to have no evidence of arterial insufficiency in either lower extremity in February 2014, and testing in June and September 2014 were negative for deep venous thrombosis. (R. at 34, citing R. at 297-98, 457-48, 605, 619, 654.) Moreover, Plaintiff has failed to

present any evidence of "extensive brawny edema[3] involving at least two-thirds of the leg between the ankle and knee" or "superficial varicosities, stasis dermatitis, *and* either recurrent ulceration or persistent ulceration that has not healed following at least 3 months of prescribed treatment" that Listing 4.11 requires. *See Wooten v. Apfel*, 108 F.Supp.2d 921, 925 (E.D. Tenn. 2000) ("A diagnosis of chronic venous insufficiency alone does not mean that the plaintiff's condition meets the severity requirements of Listing 4.11,") (citation omitted). "[T]o be considered disabled under the Listing of Impairments; a claimant must establish that his condition is either permanent, is expected to result in death, or is expected to last at least 12 months, as well as show that his condition meets or equals one of the listed impairments." *Listenbee v. Sec'y of Health & Human Servs.*, 846 F.2d 345, 350 (6th Cir. 1988). Plaintiff has not met this burden. Indeed, Plaintiff has wholly failed to produce any evidence, as is his burden, to show that he meets or medically equals Listing 4.11, and his claim of error should be denied. *See Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014) ("[E]ven if these reasons failed to support the ALJ's step-three findings, the error is harmless,

---

[3] "Brawny edema" is described as "swelling that is usually dense and feels firm due to the presence of increased connective tissue; it is also associated with characteristic skin pigmentation changes. It is not the same thing as pitting edema. Brawny edema generally does not pit (indent on pressure), and the terms are not interchangeable. Pitting edema does not satisfy the requirements of 4.11A." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 4.00G.

because Forrest has not shown that his impairments met or medically equaled in severity any listed impairment."). Under these facts, the Commissioner did not err by failing to find that Plaintiff met or equaled Listing 4.11.

### 3. The ALJ's RFC Determination

Plaintiff argues that the ALJ's RFC determination that Plaintiff was capable of performing a limited range of sedentary work is not supported by substantial evidence. (DE 15 at 20-25.) He contends that the ALJ impermissibly "played doctor" and improperly considered the opinion evidence. (*Id.*) The Commissioner responds that the ALJ's RFC determination is supported by substantial evidence. (DE 17 at 17-24.)

Initially, it must be borne in mind that Plaintiff bears the burden of proof at Steps 1-4, including proving his RFC. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (["D]uring the first four steps, the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five.") *(citing Young v. Sec'y of Health and Human Servs.,* 925 F.2d 146, 148 (6th Cir.1990); *Allen v. Califano,* 613 F.2d 139, 145 (6th Cir.1980)); *Cole v. Sec'y of Health and Human Servs.,* 820 F.2d 768, 771 (6th Cir.1987)); *see also Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008) ("The claimant, however, retains the burden of proving her lack of residual functional capacity"). The Commissioner has the

burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391-92.

Plaintiff's RFC is "the most [he] can still do despite the physical and mental limitations resulting from [his] impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); s*ee also* 20 C.F.R. §§ 404.1545(a), 416.945(a). The determination of Plaintiff's RFC is an issue reserved to the Commissioner and must be supported by substantial evidence. 20 C.F.R. §§ 404.1527(e), 416.927(e). However, "'ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.'" *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009) (citation omitted). Pursuant to Social Security Rule 96-8p, the RFC assessment must include:

> [A] narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

S.S.R. 96-8p, 1996 WL 374184, at *6-7. "Although SSR 96–8p requires a 'function-by-function evaluation' to determine a claimant's RFC, case law does not require the ALJ to discuss those capacities for which no limitation is alleged."

21

*Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547 (6th Cir. 2002). Instead, the ALJ "'need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record.'" *Id.* (citations omitted).

The ALJ here thoroughly reviewed and considered Plaintiff's function report, his hearing testimony, his daily activities, the objective medical evidence, his treatment history, and the opinion evidence, and found that Plaintiff was capable of performing a reduced range of sedentary exertional work. (R. at 33-37.) Specifically, in addition to reviewing Plaintiff's medical record evidence in general, the ALJ reviewed the three medical opinions in the record and gave each opinion "some weight." (R. at 37-38, citing R. at 345-47, 843-56.) Specifically, the ALJ found that:

- Plaintiff's treating family practice doctor Cibu Panicker, M.D., provided a medical source statement dated May 25, 2013, in which he opined that Plaintiff could lift up to 50 pounds occasionally and 20 pounds frequently, and could stand/walk at least two hours in an eight-hour workday. (R. at 345-47.) The ALJ gave this opinion "some weight," finding "the evidence as a whole *also* supports *additional limitations* resulting from back and shoulder issues, reducing him to the sedentary exertional level." (R. at 37 (emphases added).)

- Plaintiff's treating doctor, Usama Gabr, M.D., provided a medical source statement dated September 5, 2014, in which he opined that Plaintiff was limited to activity at less than the sedentary level, including lifting less than 10 pounds and standing, walking and sitting less than two hours in an eight-hour workday. (R. at 843-44.) The ALJ gave this opinion "some weight, as

22

those of a treating source," explaining that "[w]hile Claimant's records from Dr. Gabr do note pain with radicular symptoms and, at times, decreased sensation and limited strength or spasm, his notes also indicate that Claimant improved significantly with injections, in that, he no longer has radicular symptoms or decreased sensation, his range of motion improved, and his pain had decreased to the point that it was controlled with medications[.] Furthermore, radiographic exams indicate only essentially mild findings regarding the shoulder and back, and subsequent exams reveal even lesser findings of pain and radiculopathy."  (R. at 36, citing R. at 843-44.)

- Finally, consultative examiner Holly Smith, D.O. examined Plaintiff on January 31, 2015 and opined that Plaintiff could perform work at the medium exertional level.  (R. at 846-56.)  Dr. Smith found that Plaintiff reported pain with movement, but was able to get on and off the exam table without difficulty, did not use an assistive device for walking, had full motor strength, full range of motion, and negative straight leg raising.  (*Id.*)  The ALJ gave this opinion "some weight," because while it is "consistent with the findings of this exam, treating records generally support greater physical limitations."  (R. at 36.)

The ALJ concluded that while "[a] recent consultative evaluation found that Claimant could perform work at the medium exertional level[,] [t]he sedentary level is more appropriate given the objective evidence and subjective complaints." (*Id.* at 37.)

Plaintiff complains that the ALJ improperly discounted parts of each of the three medical opinions in the record in reaching his RFC determination, "taking bits and pieces from the various opinions to formulate his final assessment" and impermissibly "playing doctor."  (DE 15 at 20-24.)  Plaintiff contends that the basis of the ALJ's RFC determination therefore is unclear.  (*Id.*)  However, as the Commissioner correctly explains, the ALJ was not "obligated to draft an RFC

23

assessment which comported with one drafted by a physician, and [was] instead entitled to an RFC based on his evaluation of the available medical evidence." *Sparrow v. Comm'r of Soc. Sec.*, No. 15-cv-11397, 2016 WL 1658305, at *7 (E.D. Mich. Mar. 30, 2016) (citing *Rudd*, 531 F. App'x at 728, and noting that, as in *Rudd*, "the ALJ may find that the claimant can perform light work even where no doctor corroborates that assessment"), *report and recommendation adopted*, 2016 WL 1640416 (E..D. Mich. Apr. 26, 2016). And, contrary to Plaintiff's criticism of the ALJ for "taking bits and pieces from the various opinions to formulate his final assessment[,]" the ALJ is not required to adopt one source's entire report, but rather may "piece together the relevant medical facts from the opinions of multiple physicians," which is what the ALJ did here.  *See Evangelista v. Sec'y of Health & Human Servs.*, 826 F.2d 136, 144 (1st Cir. 1987) (rejecting plaintiff's argument that "there must always be some super-evaluator, a single physician who gives the factfinder an overview of the entire case" as "unsupported by the statutory scheme, or by the caselaw, or by common sense, for that matter").

Plaintiff also complains that the ALJ did not incorporate some specific limitations contained in the opinions, such as Dr. Gabr's statement that reaching, pushing/pulling and feeling would be "affected" and that his symptoms would "often" interfere with his attention and concentration, and Dr. Smith's opinion that Plaintiff should never be exposed to environmental irritants such as dust, odors and

24

fumes.  (DE 15 at 22-24, citing R. at 844, 853.)  However, as explained above, the ALJ was not required to adopt a medical source's entire opinion.  With regard to Plaintiff's ability to reach, push/pull and feel, Dr. Gabr only noted "sensory exam" in support of those limitations.  (R. at 844.)  However, Dr. Gabr's most recent treatment note indicated "grossly stable sensory examination to light touch."  (R. at 591.)  The ALJ noted that Plaintiff's medical examinations revealed progressively more mild findings, good functional improvement, generally full ranges of motion and motor strength, and "grossly stable sensory examination to light touch," and that his pain symptoms were well controlled with medication.  (R. at 35-36, citing R. at 566, 568, 582, 590-91, 598, 615, 618, 847-48.)  Accordingly, the ALJ's RFC determination for a reduced range of sedentary level work, which already "represents a significantly restricted range of work," 20 C.F.R. Pt. 404, Subpt. P, App.2, § 201.00(h)(4), that did not include specific *additional* limitations in reaching, pushing, pulling or feeling, is supported by substantial evidence.  *See Blakley*, 581 F.3d at 406 ("[I]f substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'") (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Plaintiff has not pointed to any evidence in the record, beside Dr. Gabr's unsupported, minimalistic opinion, that Plaintiff experienced any problems with

attention and concentration.  In fact, as discussed above, Plaintiff self-reported that

he could pay attention "all the time" and had no problems with concentration.  (R.

at 241.)  Thus, the ALJ did not err with respect to these limitations in his RFC

determination.

Finally, the ALJ's finding that Plaintiff should "avoid" concentrated

exposure to environmental irritants, instead of adopting Dr. Smith's opinion that he

should never have such exposure, is supported by the medical record evidence.

While Plaintiff reported intermittent difficulty taking deep breaths, there was no

record evidence of pulmonary embolism, only mild emphysema, and Plaintiff

continued to smoke, despite continuously being advised to quit. (R. at 34-36, citing

R. at 368, 457, 553, 569, 653.)  Thus, the ALJ's RFC determination is supported

by substantial evidence.  In any event, as the Commissioner explains, the jobs

supporting the ALJ's Step 5 finding do not require any exposure to such irritants,

and therefore the specific limitation is immaterial.  *See  DOT* §§ 532.687-086

(sorter), 559.687-014 (packer), 739.687-086 (assembler); *see also Biestek*, 880

F.3d at 787 (the ALJ's failure to include a specific limitation was harmless where

the DOT description of the relevant jobs did not involve the omitted restrictions.)

Thus, I find that there is substantial evidence supporting the ALJ's RFC

determination.  I note that an ALJ's decision cannot be reversed merely because

there exists some other evidence in the record that might support a different

26

conclusion.  *See McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) ("The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion….  This is so because there is a 'zone of choice' within which the Commissioner can act without the fear of court interference.") (citation omitted); *see also Biestek*, 880 F.3d at 783 ("[A] decision supported by substantial evidence must stand, even if we might decide the question differently based on the same evidence.").  The instant decision is supported by substantial evidence, and accordingly, should stand.

### 4.    The ALJ's Step Five Finding

Plaintiff complains in his fourth claim of error that the ALJ failed to formulate a hypothetical question to the vocational expert that captured all of his limitations.  (DE 15 at 25-26.)  Although Plaintiff purports to frame this as a challenge to the ALJ's Step 5 determination, because the hypothetical posed to the vocational expert in this matter is essentially identical to the RFC, this is in reality a "veiled attack" on the ALJ's underlying RFC finding.  *See Kirchner v. Colvin*, No. 12-CV-15052, 2013 WL 5913972, at *11 (E.D. Mich. Nov. 4, 2013) ("Kirchner's Step Five argument is a veiled attack on the ALJ's underlying RFC finding" because "this is not a scenario where the ALJ's hypothetical failed to match up to the RFC he ultimately imposed"); *see also Her v. Comm'r of Soc. Sec.*,

203 F.3d 388, 392 (6th Cir. 1999) ("To require the Commissioner to prove a

claimant's RFC at step five is essentially to partially shift the burden of proof

required of a claimant at step four to the Commissioner.").

Plaintiff again contends, as he did above, that the ALJ did not incorporate

Dr. Smith's opinion that Plaintiff should "never" be exposed to dust, odors, fumes

and pulmonary irritants, or Dr. Gabr's opinion that Plaintiff would "often" have

problems with regard to attention and concentration.  (DE 15 at 26, citing R. at

853.)  However, both of those arguments have already been addressed above: the

RFC was a proper reflection of the record evidence and the Step 5 hypothetical

was consistent with it.

Plaintiff also alleges, without citation to any record evidence, that he needs

to elevate his legs.  He fails to cite to any opinion or other medical evidence in

support of this limitation, and the only record evidence regarding the need to

elevate his legs is contained in his own hearing testimony and his function report.

(*See* R. at 56-57, 62, 237.)  However, the ALJ found that "Claimant's statements

concerning the intensity, persistence and limiting effects of these symptoms are not

entirely credibly[.]"  (R. at 34.)  Plaintiff fails to develop any argument regarding

the ALJ's credibility analysis in general, or the need to elevate his legs in

particular, stating only, without the citation to any record evidence, that "given the

significant swelling that [Plaintiff] has been noted to experience in his lower

28

extremities, he has the need to elevate his legs, which he does, according to his testimony, in a reclining chair." (DE 15 at 26.) It is well-settled that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *Spiteri v. Colvin*, No. 14-14140, 2015 WL 7258749, at *3 (E.D. Mich. Nov. 9, 2015) (Stafford, M.J.) (footnote omitted), *report and recommendation adopted,* 2015 WL 8538036 (E.D. Mich. Dec. 11, 2015) (Michelson, J.) (quoting *McPherson v. Kelsey,* 125 F.3d 989, 995–96 (6th Cir. 1997)) (footnote, citation and internal quotation marks omitted). The administrative record in this case is over 800 pages long, and the Court will not search the record for potential arguments or evidence beneficial to Plaintiff. *Jones v. Comm'r of Soc. Sec.*, No. 3:12 CV 2986, 2013 WL 4748083, at *8 (N.D. Ohio Sept. 4, 2013) ("[I]t is not the Court's function to search the administrative record for evidence to support [Plaintiff's] 'argument' or find law supporting [his or] her claims. This Court does not conduct a *de novo* review in social security proceedings, and certainly cannot be expected to craft an argument on [Plaintiff's] behalf.") (quotation marks and citations omitted). In any event, as discussed above, the record evidence demonstrates that Plaintiff was assessed in April and May 2013 as having deep vein thrombosis, but Plaintiff was found to have no evidence of arterial

insufficiency in either lower extremity in February 2014, and testing in June and September 2014 were negative for deep venous thrombosis, and he was assessed with intermittent edema, but no physician opined that Plaintiff needed to elevate his legs.  (R. at 34, citing R. at 297-98, 457-48, 605, 619, 654.)  The Court has no obligation to, and will not, pour through this lengthy medical record in search of contrary evidence which the Plaintiff does not otherwise supply. *See Davis v. Comm'r of Soc. Sec*., No. 2:15-cv-12644, 2016 WL 4445774, at *10 (E.D. Mich. July 29, 2016) (Patti, M.J.) ("Having already concluded that the treating physician's…opinions were properly discounted, the Court has no affirmative duty to go through the state agency reviewer's (or the consultative examiner's) findings with a fine-toothed comb to verify consistency with the 379-page record, particularly where Plaintiff has failed to use the adversarial process to point out any inconsistencies."), *report and recommendation adopted*, 2016 WL 4429641 (E.D. Mich. Aug. 22, 2016) (Leitman, J.).  Plaintiff has failed to demonstrate that or how the ALJ's RFC is not supported by substantial evidence and has failed to convincingly show that a different outcome was legally or factually required on this record.  Plaintiff's claim of error should be denied.

### G.    Conclusion

In sum, the ALJ's opinion is supported by substantial evidence and is based upon a proper application of law.  Accordingly, it is **RECOMMENDED** that the

Court **DENY** Plaintiff's motion for summary judgment (DE 15), **GRANT**

Defendant's motion for summary judgment (DE 17), and **AFFIRM** the

Commissioner of Social Security's decision.

## III.    PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d).   Failure to file specific objections constitutes a waiver of any further right

of appeal.   *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health &*

*Human Servs.*, 932 F.2d 505 (6th Cir. 1981).   Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation.   *Willis v. Sullivan*, 931 F.2d

390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d

1370, 1273 (6th Cir. 1987).   Pursuant to Local Rule 72.1(d)(2), any objections

must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No.

2," *etc.*   Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.   Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.   Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR

72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.


Dated: January 23, 2019                         s/*Anthony P. Patti*
                                                Anthony P. Patti
                                                UNITED STATES MAGISTRATE JUDGE



## Certificate of Service

I hereby certify that a copy of the foregoing document was sent to parties of record on January 23, 2019, electronically and/or by U.S. Mail.

                                     s/Michael Williams
                                     Case Manager for the
                                     Honorable Anthony P. Patti